UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ALAN HERZ,

                                        Plaintiff,

                                                                Docket No. 20-CV-2846 (JPO)

              -against-

THE CITY OF NEW YORK; BOARD OF EDUCATION
OF THE CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK; NEW YORK CITY OFFICE OF SPECIAL
INVESTIGATIONS; NEW YORK CITY OFFICE OF
EQUAL OPPORTUNITY AND DIVERSITY
MANAGEMENT; ADAM BOXER;
MOSES OJEDA; ROXANNA THOMAS;
LAURA HEMANS BRANTLEY, ESQ.;
HOWARD FRIEDMAN; JESSICA GROPPE a/k/a
JESSICA KISHPAUGH; and
"JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff
to designate any and all individuals, officers, members,
agents, servants, and/or employees of the
aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally,

                                        Defendants.
-------------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. RULE OF CIV. PROCED. 12 (b)**


LAW OFFICES OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL4471)
Attorneys for Plaintiff, *Alan Herz*
600 Old Country Road, Ste. 530
Garden City, New York 11530
Phone #: (516) 794-4700
Fax #: (516) 794-2816
E-Mail: Tom@TLiotti.com

## **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................ i

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ...............................................................................2

ARGUMENT....................................................................................................4

POINT I

      PLAINTIFF'S CLAIMS ARE NOT UNTIMELY OR IMPROPER ............................... 5

A.  The Plaintiff's Claims are NOT Barred by Education Law § 3813......................... 5

B.  Plaintiff's Claims Against BOE Offices and the City of New York
Should NOT Be Dismissed ...................................................................... 10

POINT II

      PLAINTIFF'S DEFAMATION CLAIM SHOULD NOT BE DISMISSED ................... 11

A.  The Plaintiff's Defamation Claim is NOT Barred
by the Statute of Limitations.................................................................... 11

B.  The Plaintiff Has Stated a Claim Upon Which Relief
for Defamation Can Be Granted ............................................................... 11

POINT III

      PLAINTIFF HAS DEMONSTRATED A CLAIM FOR
AGE DISCRIMINATION UNDER THE NYSHRL ...................................... 15

POINT IV

      PLAINTIFF HAS DEMONSTRATED A CLAIM FOR
NEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS AND NEGLIGENCE ...............................................................17

POINT V

      PLAINTIFF HAS DEMONSTRATED A CLAIM FOR
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ......................................19

POINT VI

      PLAINTIFF HAS DEMONSTRATED A CLAIM FOR FRAUD...................................21

POINT VII

      PLAINTIFF HAS DEMONSTRATED A CLAIM FOR VOLATION OF DUE
      PROCESSUNDER 42 USC § 1983 AND ARTICLE I, § 11
      OF THE NEW YORK CONSTITUTION .......................................................................23

CONCLUSION......................................................................................................................... 24

## **TABLE OF AUTHORITIES**

CASES                                                                    PAGE

- FEDERAL CASES

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) ...........................16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) at 678 ............................................................4

*Beasley v. Alabama State Univ.*, 966 F. Supp. 1117, 1129 (M.D. Ala. 1997) ...........................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127
S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) ...............................................................................4

*Bell v. Chesapeake & Ohio Ry. Co.*, 724 F. Supp. 489, 491
(E.D. Mich. 1989), aff'd, 929 F.2d 220 (6th Cir. 1991) ...............................................................8

*Berry v. Board of Supervisors of La. State Univ.*, 715 F.2d 971 (5th Cir. 1983) .......................8

*Bloom v. Fox News of LA*, 528 F. Supp. 69, (EDNY 2007) ...................................................17

*Brown v. Middaugh*, 41 F. Supp. 2d 172, 181-82 (N.D.N.Y. 1999) ...........................................8

*Butz v. Economou*, 438 U.S. 478, 98 S. Ct. 2894,
57 L. Ed. 2d 895, 1978 U.S. LEXIS 132) .................................................................................14

*Caudill v. Farmland Indus., Inc.*, 698 F. Supp. 1476, 1482-83 (W.D. Mo. 1988),
aff'd, 919 F.2d 83 (8th Cir. 1990) .................................................................................................8

*Chapadeau v. Utica Observer-Dispatch*, 38 NY2d 196, 199 (1975) .......................................17

*Cleavinger v. Saxner*, 474 U.S. 193, 201-02, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985) ...........14

*Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ...............................4

*Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) .............................................................7

*Davis v. State of Cal. Dep't of Corrections*, 1996 U.S. Dist. LEXIS 21305,
No. S-93-1307, 1996 WL 271001, at *22 (E.D. Cal. Feb. 23, 1996) ...........................................8

*Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 477 (E.D. Va. 1999) .............................8

CASES                                                                                                  PAGE

- ▪ FEDERAL CASES (continued)

*Deposit Cent. Sch. Dist. v. Public Employment Relations Bd.*,
214 A.D.2d 288, 633 N.Y.S.2d 607, 1995 N.Y. App. Div. LEXIS 10727
(N.Y. App. Div. 3d Dep't 1995), app. denied, app. dismissed,
88 N.Y.2d 866, 644 N.Y.S.2d 684, 667 N.E.2d 335,
1996 N.Y. LEXIS 717 (N.Y. 1996) ........................................................................................9

*Detrick v. H & E Machinery, Inc.*, 934 F. Supp. 63, 67 (W.D.N.Y. 1996) ................8

*Dodson v. The N.Y. Times Co.*, 1998 U.S. Dist. LEXIS 15764,
No. 97- Civ.-3838, 1998 WL 702277, (S.D.N.Y. Oct. 7, 1998) ..................................8

*Dressler v. N.Y. City Dept. of Educ.*, No. 10 Civ. 3769,
2012 U.S. Dist. LEXIS 44249, 2012 WL 1038600, (S.D.N.Y. March 29, 2012) ..............15, 17

*Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ...........................4

*Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988) ...................13

*Garcia v. Puccio*, 17 A.D.3d 199, 793 N.Y.S.2d 382 (1st Dept. 2005) ....................................13

*Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 2001 U.S. Dist. LEXIS 7918 ................................20

*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176,
129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009) .....................................................................17

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984) ............4

*Holowecki v. Fed. Exp. Corp.*, 382 Fed. App'x 42, 45 (2d Cir. 2010) .....................................16

*Imbler v. Pachtman*, 424 U.S. 409, 423 n.20, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976) ............14

*Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997) ..........................7

*Ludwig v. Rochester Psychiatric Ctr.*, 347 Fed. App'x 685, 686 n.1 (2d Cir. 2009) ................17

*Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir. 1993) ...........................7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802,
93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) .................................................................................16

*Monell v. Department of Social Serv.*, 436 U.S. 658 (1978) .....................................................23

CASES                                                                                                  PAGE

- **FEDERAL CASES** (continued)

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313,
116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996) ................................................................16

*Owens v. Okure*, 488 U.S. 235, 237, 102 L. Ed. 2d 594,
109 S. Ct. 573 (1989) ..............................................................................................11

*Quinn v. Green Tree Credit Corporation*, 159 F.3d 759
(2d Cir. 1998), at 765-66..........................................................................................8

*Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) 66 ...............................................19

*Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019) .........................20

*Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) ................................16

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ...................................................................12

*Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997) .......................8

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*,
748 F.2d 774, 779 (2d Cir. 1984) ...........................................................................4, 5

*Sabree v. United Bhd. of Carpenters & Joiners Local No. 33*,
921 F.2d 396, 402 (1st Cir. 1990) ..............................................................................8

*Scott v. Federal Reserve Bank of N.Y.*,
704 F. Supp. 441, 450 (S.D.N.Y. 1989) ......................................................................8

*Selan v. Kiley*, 969 F.2d 560, 566 (7th Cir. 1992) .....................................................8

*Shamley v. ITT Corp.*, 869 F.2d 167, 172 (2d Cir. 1989) ..........................................11

*Sorlucco v. N.Y. City Police Dep't.*, 888 F.2d 4, 7 (2d Cir. 1989) ............................16

*Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1155 (2d Cir. 1993) ..........................16

*Villines v. United Bhd. of Carpenters & Joiners of Am.*,
AFL-CIO, 999 F. Supp. 97, 102 (D. D.C. 1998) .........................................................8

*Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013......................................................4

*Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 467 (2d Cir. 1997) ....................17

CASES                                                                                            PAGE

- ■ FEDERAL CASES (continued)

*Williams v. City of New York*, 2014 US Dist. LEXIS 49837
(SDNY Mar. 26, 2014), aff'd, 602 Fed. Appx. 28 (2d Cir. 2015) ............................................10

*Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) ......................................16

*Youssef v. M. Rosenblatt & Son, Inc.*, 1992 U.S. Dist. LEXIS 6692,
No. 91- Civ.-5063, 1992 WL 116633, (S.D.N.Y. May 18, 1992) ..........................................7, 8

- ■ STATE CASES

*Fischer v. Maloney*, 43 NY2d 553, 558 [1978]) ........................................................................18

*Flamm v. Van Nierop*, 56 Misc. 2d 1059, 1061,
291 N.Y.S.2d 189, 191 (Westchester Cty. Sup. Ct. 1968) ........................................................19

*Flatley v. Hartmann*, 138 A.D.2d 345, 346,
525 N.Y.S.2d 637, 638 (2d Dep't 1988) ..................................................................................19

*Halio v. Lurie*, 15 A.D.2d 62, 67, 222 N.Y.S.2d 759, 764 (2d Dep't 1961) ............................19

*International Shared Servs. v. County of Nassau*,
222 A.D.2d 407, 634 N.Y.S.2d 722,
1995 N.Y. App. Div. LEXIS 12583, 634 N.Y.S.2d at 724........................................................20

*Levine v. Gurney*, 149 A.D.2d 473, 473,
539 N.Y.S.2d 967, 968 (2d Dep't 1989) ..................................................................................19

*Matter of Fotopoulos v. Board of Fire Commr. of the*
*Hicksville Fire Dist.*, 161 A.D.3d 733, 734, 76 N.Y.S.3d 592 [2d Dept. 2018] ........................9

*Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303,
461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983) ..................................................................18, 19

*Muessman v. Ward*, 95 Misc. 2d 478, 408 N.Y.S.2d 254,
1978 N.Y. Misc. LEXIS 2450 (N.Y. Sup. Ct. 1978) ..............................................................24

*Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449
10 Misc3d 998 (2005) ............................................................................................................12

*Perez v. City of New York*, 9 Misc. 3d 934, 936-37,
804 N.Y.S.2d 632, 633 (N.Y. Sup. Ct, Bronx Co. 2005) ........................................................11

CASES                                                                        PAGE

- ▪  STATE CASES (continued)

*P.I, ex rel. R.I., Sr.*, 10 Misc. 3d 1073[A], 814 N.Y.S.2d 891,
2006 NY Slip Op 50051[U] [N.Y. Sup. Ct., New York Co., 2006] .........................................11

*Santana v. Leith*, 117 AD3d 711, 712 [2d Dept. 2014] ...........................................18

*Sheila C. v. Povich*, 11 AD3d 120, 131 [1st Dept. 2004] ........................................18

*Sullivan v. Bd. of Educ. of Eastchester Union Free Sch, Dist.*,
131 A.D.2d 836, 517 N.Y.S.2d 197, 199 (N.Y. App. Div. 1987) ............................................20

STATUTES AND LAW                                                             PAGE

29 U.S.C. § 631(a) ......................................................................................15

29 U.S.C. § 623(a)(1) ..................................................................................15

42 USC § 1983............................................................................................1

Age Discrimination in Employment Act of 1967 ("ADEA") .....................................15

CPLR §215(3) ........................................................................................11, 19

Education Law § 3813 .................................................................................5, 9

Education Law § 3813 [2] ................................................................................10

N.Y. Educ. Law §3813(1) ..................................................................................9

N.Y. Exec. Law § 296(1)(a) ............................................................................17

L 2002, ch. 91 .............................................................................................10

General Municipal Law § 50-e [1] [a] ...............................................................10

New York General Municipal Law Section 50-e ...................................................6

New York General Municipal Law Section 50-h ...................................................6

New York General Municipal Law Section 50-I...............................................6, 19, 20

New York General Municipal Law Section 50-I(3)................................................20

STATUTES AND LAW                                          PAGE

New York State Constitution (Art I, § 11) ................................................................24

Restatement of Torts, Second, § 46 cmt. d (1965) ....................................................19

Rule 12(b) ........................................................................................................4, 24

Plaintiff, Alan Hertz, (hereinafter "Plaintiff" or "Mr. Hertz"), a private individual, respectfully submits this Memorandum of Law in Opposition to the New York City Defendants' (*City of New York, Board of Education of the City School District of the City of New York, New York City Office of Special Investigations, New York City Office of Equal Opportunity and Diversity Management, Adam Boxer, Moses Ojeda, Roxanna Thomas, Laura Hemans Brantley, and Jessica Kishpaugh*)[1], (hereinafter referred to collectively as the "Defendants"), Motion to Dismiss the Plaintiff's Verified Complaint pursuant to Federal Rule of Civil Procedure 12 (b).

## PRELIMINARY STATEMENT

Plaintiff was a dedicated, effective, and highly respected tenured New York City Public School Teacher, employed by the Department of Education and assigned to teach mathematics for approximately seventeen (17) years, at Thomas A. Edison Career & Technical Education High School, in Queens County, New York. He seeks damages related *inter alia* to claims of defamation and defamation *per se*, discrimination on the basis of age under the New York State Human Rights Law ("NYSHRL"), negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, fraud, and violation of due process under 42 USC § 1983, and the New York Constitution. This action was commenced in the New York County Supreme Court on February 4, 2020, and upon application by the Defendants, the matter was removed to the Southern District of New York on April 6, 2020.

In this action, the Plaintiff challenges the unlawful, fraudulent, and prejudicial treatment faced at the hands of the New York City Board of Education and Department of Education and its internal departments, agents, and employees, wherein they negligently and intentionally brought and enforced unsubstantiated and untimely specifications against him, tampered and adulterated evidence to suit

---

[1] The Defendants' counsel erroneously states that the Defendant, Howard Friedman has not been served with a copy of the Summons and Verified Complaint in this action; however, in fact, the Defendant was served on February 27, 2020. A copy of the Affidavit of Service is annexed hereto as **Exhibit A**.

their own false narratives, subjected him to unlawful removal from his duties, defamation and humiliation, and violated the existing collective bargaining agreement and prejudiced his rights to due process. The Plaintiff remained in a reassignment center through the middle of March, 2019, and his inability to return to the classroom subjected the Plaintiff to continuing harm.

**STATEMENT OF FACTS**

Plaintiff was accused of making offensive comments to students, to wit: in the 2013/2014 academic year there was a complaint made against the Plaintiff alleging racial discrimination and gender discrimination. Particularly, in February, 2014, two students having a conversation in the Plaintiff's class, accused the Plaintiff of favoring the male students over the female students. Later, when one of the aforesaid students (Student A) raised her hand and indicated that she did not understand the work, the Plaintiff is alleged to have jokingly responded to her "*Well, I guess that's because you're a female.*" In approximately, October, 2013, another student in the Plaintiff's twelfth grade class had been instructed not to sell chocolate bars in class (E.Z.). A disturbance in class was created between this student and another who had allegedly purchased a "defective" chocolate bar, and the Plaintiff is alleged to have taken the "defective" chocolate bar from the student (E.Z) and jokingly said, "*I know how Jewish people like to do business.*" The Plaintiff is alleged to have later apologized to the student E.Z.

On or about February 27, 2017, (approximately three (3) years later), the Plaintiff was alleged to have engaged in verbal abuse or misconduct unbecoming to his profession back in 2014; specifically alleging racial discrimination involving another student (T.W). Nonetheless, aside from being untimely raised, the context that that is reported in the investigation of this untimely event is incorrect. The actual context of the alleged comment arose as a result of the Plaintiff's class not receiving textbooks until February, 2014, though they should have received them in September, 2013, at the beginning of the school year; however, they were apparently not ordered. Accordingly, the Plaintiff distributed the textbooks at the beginning of the Spring term (2014), but student T.W. was absent when the books

2

were distributed. When she came back to school the next day, the Plaintiff gave her a textbook, and she allegedly asked, "What's the penalty?" and the Plaintiff is alleged to have jokingly responded, "*I don't know; I guess five lashes.*" Student T.W. is alleged to have laughed at the Plaintiff's alleged comment.

Furthermore, the timing of the reporting of these events is suspect and questionable, to wit: the OEO Report alleges that the Defendant, Assistant Principal, Adam Boxer, did not forward to the Office of Equal Opportunity and Diversity Management (OEO) a complaint on behalf of Student A, until March 3, 2014, which alleged gender/sex and race discrimination against the Plaintiff. In this regard, on March 25, 2014, OEO is alleged to have interviewed Student A, wherein she (Student A), alleged that she observed the exchange between the Plaintiff and Student E.Z; nonetheless, she was unable to identify the other student involved. In this interview, Student A also asserted the aforementioned alleged gender based discriminatory comment directed at her. She also recounted that in February, 2014, she observed an exchange between the Plaintiff and another student, who questioned the reading assignment, wherein the Plaintiff is alleged to have responded, "This is how we read well in this country." While she indicated that she interpreted the comment as a negative comment regarding ethnicity/national origin, Student A could not identify this student's national origin. Further, Student A recounted her observation of the conversation involving student T.W.

Notably, the original complaint electronically transmitted to OSI on or about February 28, 2014, only specified two issues, and no documentation of that transmission was ever provided to the Plaintiff during discovery by the New York City Department of Education. The investigator concluded that the student didn't want to get other students involved, yet the complaint evidently revised after February 28, 2014, adds incidents of which, the actual students involved have no recollection. Only the complaining student brings new complaints and new students into the investigation.

On January 25, 2017, a prehearing conference was held by a hearing officer to discuss the Plaintiff's motion to dismiss the specifications brought against him by the New York City Department

of Education, as well as outstanding discovery issues. It was undisputed that the New York City Board of Education's specifications were untimely reduced to writing under the existing collective bargaining agreement. On this regard the New York City Department of Education sought, *inter alia*, to inappropriately amend the time period of the second specification against the Plaintiff to have it correspond with their narrative.

The events as outlined in further detail in Plaintiff's Amended Verified Compliant annexed hereto as **Exhibit B**, and perpetrated by Defendants herein, appropriately demonstrate claims alleging defamation and defamation *per se*, discrimination on the basis of age under the New York State Human Rights Law ("NYSHRL"), negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, fraud, and violation of the Plaintiff's due process under 42 USC § 1983, and the New York Constitution.

## ARGUMENT

When ruling on a motion to dismiss pursuant to Rule 12(b), District Courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. See, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); see also, *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) at 678 (citing, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).

Complaints, are not dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See, *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); accord, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). Because a Rule 12(b) motion challenges the facts alleged on the face of the complaint, (see, *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748

4

F.2d 774, 779 (2d Cir. 1984), or, more accurately, the sufficiency of the statements in the complaint, the question is what matters are to be considered in assessing the complaint's sufficiency.

## POINT I

### PLAINTIFF'S CLAIMS ARE NOT UNTIMELY OR IMPROPER

A.   The Plaintiff's Claims are NOT Barred by Education Law § 3813

Contrary to the Defendants' argument, the Plaintiff did file a timely Notice of Claim against the Board of Education with respect to his claims under the NYSHRL. The facts and circumstances of this action are quite complex and the true extent of what had been perpetrated by the Defendants did not become known until after the events were revealed to him. See, Exhibit B.

The Plaintiff alleges that the ensuing corrupt investigation unlawfully caused the injuries and damages to the Plaintiff. The first alleged incident involved a joking comment to Student A, which did not even remotely rise to the level of verbal abuse. The second alleged incident involved a joking comment to another student, which also did not rise to the level of verbal abuse. These are the only two incidents which actually made up the complaint on February 28, 2014. The context of these incidents could only be transformed by someone who was familiar with the verbal abuse regulations.

The OEO took a most illogical route to "investigate" what amounted to a purportedly offensive comment, so that it would appear to "uncover" the incident involving student E.Z., alleging religious discrimination. Only the two students involved in that incident would know the details of that incident, as the incident never drew the attention of the rest of the class; and student A was not involved. Conveniently, student A could not recall the names of the students. The two original complaints should seemingly lead to a disciplinary meeting, but that was not what the Defendant, Principal Moses Ojeda wanted to accomplish, when the obvious intent was to remove the Plaintiff from his budget payroll.

The Plaintiff was removed from the school building on March 3, 2017. He reported to the reassignment center on March 6, 2017. The Plaintiff was not removed from the classroom and reassigned by the administration, (who had knowledge of all of these allegations), until more than 2

years following the original allegation; when what was alleged in the February 28, 2017, correspondence seemingly required "immediate removal." On March 20, 2017, the New York City Department of Education withdrew the untimely charges against the Plaintiff, yet he remained in the reassignment center, even though they had actually been dismissed earlier. **The Plaintiff remained in the reassignment center through the middle of March, 2019.**

Also, on or about **January 25, 2019**, the Honorable Barbara Jaffe of the Supreme Court of the State of New York, New York County issued a Supplemental Decision and Judgment, finding that the Defendant, (the Board of Education of the City School District of the City of New York), did not sustain its burden of proving that the hearing officer exceeded its authority, that hearing officer abused his discretion, or that the hearing officer's decision was irrational, arbitrary, or capricious. Thus, the Defendant's petition to vacate the arbitration award was denied; and the award rendered in favor of the Plaintiff, herein was confirmed. Nonetheless, despite Justice Jaffe's determination, the Plaintiff continued to remain reassigned from his position as a teacher in the classroom due to the negligence, fraud, and malfeasance on the part of the Defendants in handling this matter. His inability to return to the classroom subjected the Plaintiff to continuing harm. Based on the foregoing, the Plaintiff has demonstrated that the Defendants have systematically targeted the Plaintiff, a veteran teacher, subjecting him to inappropriate and unwarranted administrative harassment.

The Plaintiff complied with the requirements of New York General Municipal Law Section 50-I by serving a notices of claim upon the Defendants, on or about March 26, 2019; within the time required by New York General Municipal Law Section 50-e. Further, at the request of the Defendant, City of New York, and on behalf of all New York City Defendant entities, on August 22, 2019, the Plaintiff submitted to a an examination hearing pursuant to New York General Municipal Law Section 50-h involving the events of this action. No other examination hearings were ever conducted or requested, and the Defendants never rejected the Plaintiff's Notice of Claim.

Notably, the Defendants disingenuously argue timeliness, when their specifications against him were **untimely** reduced to writing under the existing collective bargaining agreement. The Defendants incorrectly argue that the latest occurrence complained of occurred as of May 2, 2017; this is simply untrue. The Plaintiff filed a Notice of Claim within three (3) months of the final determination of Judge Jaffe, denying the Defendants' petition to vacate the arbitration award.

In this instance, the continuation violation doctrine should apply to toll the one year statute of limitations, because the episodes constituting the hostile work environment continued up until the filing of the notice of claim and within one year of the filing of the complaint, as **the Plaintiff unlawfully remained in the reassignment center through the middle of March, 2019.** Although a plaintiff is generally required to file a notice of claim within three (3) months after accrual of the claim, a "*continuing violation exception*" applies to hostile work environment claims. This is because a hostile work environment is not merely comprised of several discrete acts, but of a "series of separate acts that collectively constitute an unlawful discriminatory practice." The Defendants' arguments are without merit. Even if the originating incident, in and of itself, were not actionable, this display "collectively constitutes" an unlawful employment practice. Taking all of the Defendants' conduct as a whole, "[t]his last comment also demonstrated conduct within the limitations period sufficiently similar to the conduct without the limitations period to justify the conclusion that both were part of a single practice." The continuing violation doctrine delays the point at which the statute of limitations begins to run. When a plaintiff experiences a 'continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" See, *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997) (quoting, *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994); see also, *Quinn v. Green Tree Credit Corporation*, 159 F.3d 759 (2d Cir. 1998), at 765-66. The doctrine is a "limited exception" to the statute of limitations. See, *Youssef v. M. Rosenblatt & Son, Inc.*, 1992 U.S. Dist. LEXIS 6692, No. 91-

7

Civ.-5063, 1992 WL 116633, (S.D.N.Y. May 18, 1992); *Scott v. Federal Reserve Bank of N.Y.*, 704 F. Supp. 441, 450 (S.D.N.Y. 1989).

In *Berry v. Board of Supervisors of La. State Univ.*, 715 F.2d 971 (5th Cir. 1983), the Fifth Circuit offered what to date constitute the most comprehensive and specific standard for determining when a continuing violation has been established. *Berry*, supra, articulated three factors which, though not exhaustive, provide a focus for the issue, to wit: the first is subject matter; the second is frequency; the third factor, perhaps of most importance, is degree of permanence. Id. *Berry*, supra, has been followed in the District Courts of this circuit. See, e.g., *Brown v. Middaugh*, 41 F. Supp. 2d 172, 181-82 (N.D.N.Y. 1999) (Munson, J.), citing, *Dodson v. The N.Y. Times Co.*, 1998 U.S. Dist. LEXIS 15764, No. 97- Civ.-3838, 1998 WL 702277, (S.D.N.Y. Oct. 7, 1998); *Detrick v. H & E Machinery, Inc.*, 934 F. Supp. 63, 67 (W.D.N.Y. 1996). At least two Circuits have expressly adopted the *Berry*, supra, analysis as their own. See, *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997); *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir. 1993). Two others have cited *Berry*, supra, with approval. See, *Selan v. Kiley*, 969 F.2d 560, 566 (7th Cir. 1992); *Sabree v. United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 402 (1st Cir. 1990). Even District Courts in circuits that have not adopted *Berry*, supra, have likewise applied it as the primary standard for determining the existence of a continuing violation. See, e.g., *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 477 (E.D. Va. 1999); *Villines v. United Bhd. of Carpenters & Joiners of Am.*, AFL-CIO, 999 F. Supp. 97, 102 (D. D.C. 1998); *Beasley v. Alabama State Univ.*, 966 F. Supp. 1117, 1129 (M.D. Ala. 1997); *Davis v. State of Cal. Dep't of Corrections*, 1996 U.S. Dist. LEXIS 21305, No. S-93-1307, 1996 WL 271001, at *22 (E.D. Cal. Feb. 23, 1996); *Bell v. Chesapeake & Ohio Ry. Co.*, 724 F. Supp. 489, 491 (E.D. Mich. 1989), aff'd, 929 F.2d 220 (6th Cir. 1991); *Caudill v. Farmland Indus., Inc.*, 698 F. Supp. 1476, 1482-83 (W.D. Mo. 1988), aff'd, 919 F.2d 83 (8th Cir. 1990). *Berry*, supra, represents a sound approach to the continuing violation issue and should be utilized here. The Defendants' arguments are without merit. Even if the originating incident, in and of itself, were not actionable, this display

8

"collectively constituted" an unlawful employment practices. Taking all of the conduct as a whole, the final determination by Judge Jaffe, vindicated the Plaintiff's argument and demonstrated such conduct within the limitations period, sufficiently similar to the conduct without the limitations period, to justify the conclusion that all were part of a single practice.

Moreover, there are exceptions to the notice of claim requirement when the relief sought is equitable in nature or when the litigant "commences a proceeding to vindicate a public interest." See, *Matter of Fotopoulos v. Board of Fire Commr. of the Hicksville Fire Dist.*, 161 A.D.3d 733, 734, 76 N.Y.S.3d 592 [2d Dept. 2018]. Here, the Plaintiff argues that the notice of claim requirement should also be waived, as he initiated litigation also to vindicate a public interest. According to Plaintiffs, the Defendants' policies and practices failed to protect him from what occurred during the course of his employment. Plaintiff believes that the outcome of the litigation would affect most other tenured and retirement age Board of Education employees, who are targeted for removal to accommodate a budgetary agenda, and that it serves a significant public interest.

Additionally, substantial compliance with notice-of-claim requirement of CLS Educ. §3813 is all that is required when school district has been "sufficiently informed" of claim, and service of pleading within time required for notice can constitute substantial compliance. See, *Deposit Cent. Sch. Dist. v. Public Employment Relations Bd.*, 214 A.D.2d 288, 633 N.Y.S.2d 607, 1995 N.Y. App. Div. LEXIS 10727 (N.Y. App. Div. 3d Dep't 1995), app. denied, app. dismissed, 88 N.Y.2d 866, 644 N.Y.S.2d 684, 667 N.E.2d 335, 1996 N.Y. LEXIS 717 (N.Y. 1996).

Further, generally, under N.Y. Educ. Law §3813(1), a plaintiff seeking to proceed in court against a school district must present a written verified claim to the governing body of the school district within three months of the claim's accrual; however, should a plaintiff fail to meet this deadline, § 3813(1) also provides that a court may, in its discretion, extend the time to serve a notice of claim, although in all cases, the extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school, N.Y. Educ. Law §3813(1).

Thus, given the continuing nature of the events at issue, and the fact that Defendant had actual notice of the claim in time to properly investigate and obtain evidence, the Court may appropriately exercise its discretion in determining the notice of claim to have been timely. <u>See generally</u>, Education Law § 3813 [2]; General Municipal Law § 50-e [1] [a]).

B. <u>Plaintiff's Claims Against BOE Offices and the City of New York Should NOT Be Dismissed</u>

The Defendants erroneously argue that the claims against the New York City Office of Special Investigations, New York City Office of Equal Opportunity and Diversity Management and City of New York should also be dismissed. The Defendant, Board of Education (BOE) is a department of the City of New York, and the Thomas A. Edison Career & Technical Education High School, in Queens County, New York, where Plaintiff was employed, is operated by the New York City Board of Education (BOE). Defendants speciously argue that the BOE and the City of New York are separate legal entities, and Plaintiff was employed by the BOE, and not the City of New York, and thus, the claims asserted against the City of New York should be dismissed, as the City is not liable for the actions of the BOE or its employees; however, this is true only <u>absent some action by the City itself</u>. <u>See</u>, NY Ed Law § 2950-g (2); <u>see also</u>, <i>Williams v. City of New York</i>, 2014 US Dist. LEXIS 49837 (SDNY Mar. 26, 2014), aff'd, 602 Fed. Appx. 28 (2d Cir. 2015). In this regard, it bears mentioning that the Legislature amended the Education Law in 2002 to grant the Mayor greater control over public schools and limit the power of the BOE. <u>See</u>, L 2002, ch. 91; he was appointed to operate New York City's public education system, a/k/a. the Department of Education/Board of Education. Unlike much of the rest of New York State, since 2002, the city's schools have not had elected school boards. They are instead consolidated under the auspices of the Mayor, who appoints the schools' Chancellor and sets policy through the Department of Education.

Notably, some New York lower courts have declined to dismiss claims against the City noting that, "in light of the wholesale transfer of power and responsibility from the Board of Education to the

Mayor, the City may not shield itself from liability by claiming that the Board of Education is the responsible party." <u>See</u>, *Perez v. City of New York*, 9 Misc. 3d 934, 936-37, 804 N.Y.S.2d 632, 633 (N.Y. Sup. Ct, Bronx Co. 2005); <u>see also</u>, *P.I, ex rel. R.I., Sr.*, 10 Misc. 3d 1073[A], 814 N.Y.S.2d 891, 2006 NY Slip Op 50051[U] [N.Y. Sup. Ct., New York Co., 2006].

Thus, there is arguably a sufficient nexus in this instance to connect the City and the BOE and its employees. Nonetheless, Plaintiff named and sufficiently plead all causes of action against the Board of Education, which is a department of the City of New York.

**POINT II**

**PLAINTIFF'S DEFAMATION CLAIM SHOULD NOT BE DISMISSED**

A.  <u>The Plaintiff's Defamation Claim is NOT Barred by the Statute of Limitations</u>

The Defendants first argue that the complaint is barred by the statute of limitations for defamation, because the statute of limitations for defamation in New York is one year. <u>See</u>, CPLR §215(3). Nonetheless, the statute of limitations applicable to a defamation claim brought pursuant to §1983 claim is three years. <u>See</u>, *Owens v. Okure*, 488 U.S. 235, 237, 102 L. Ed. 2d 594, 109 S. Ct. 573 (1989). Here, the Plaintiff has raised §1983 claims in this action. Defendants failed to act in accordance with the preservation of the Plaintiff's due process rights. As a result, the Plaintiff was subjected to an erroneous, unsubstantiated process, served with fabricated and unfounded charges, and placed on a removal from the classroom that was unwarranted and exceeded the maximum allowable amount of time.

In this regard, the Defendants acknowledge that the latest statement or publication complained of occurred on May 2, 2017, and the Plaintiff filed this action on February 4, 2020, prior to the time that the three year statute of limitations period had expired. <u>See</u>, *Shamley v. ITT Corp.*, 869 F.2d 167, 172 (2d Cir. 1989) (holding that the statute of limitations period for defamation begins to run on the date of the publication of the allegedly defamatory material). Therefore, Plaintiff's defamation claim is not time-barred and should not be dismissed

11

B. <u>The Plaintiff Has Stated a Claim Upon Which Relief for Defamation Can Be Granted</u>

The Defendants were fully aware that the accusations against the Plaintiff were untimely, yet, reported these accusations to the news media. The arbitrator had dismissed these specifications, yet the Defendants were utilizing the media to punish the Plaintiff, knowing that the Plaintiff had no way of refuting the claims publically. The only reason to justify the Defendants' actions was to purposefully damage the Plaintiff's reputation in the public eye. The Plaintiff was presumed to be guilty in these areas, despite the glowing procedural discrepancies and mishandling and fabrication of information. This rush to judgment without an opportunity for the Plaintiff to be heard is a denial of due process and the equal protection of the laws and defamation.

The hallmark of a defamation claim is reputational harm. Former United States Supreme Court Justice, Potter Stewart wrote in *Rosenblatt v. Baer*, 383 U.S. 75 (1966), that the essence of a defamation claim is the right to protect one's good name. According to Justice Stewart, this tort "reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty." <u>Id</u>. It bears mentioning that under New York law, some written statements are considered defamation (libel) *per se* if they "(1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in its business, trade or profession; (3) [communicate that] plaintiff has some loathsome disease; or (4) impute unchastity." <u>See</u>, *Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449 10 Misc3d 998 (2005). Such statements are presumed to cause injury, so a separate showing of harm is not necessary. Here, the facts as presented accuse Plaintiff, (as unceremoniously described in the Daily News and New York Post on May 2, 2017), of being a bigot and making sexist, racist, and anti-Semitic remarks to students, which were otherwise uncorroborated and improperly brought, irreparably injured Plaintiff in his profession as a teacher and otherwise.

Defendants have disingenuously and improperly sustained facts of this case by manipulating the system and tampering and falsifying documents in order to suit their own agenda. Defendants have relied upon the erroneous argument that the substance of the allegations and statement of findings, are

12

not falsehoods, and thus, not defamatory. This is unsatisfactory. Plaintiff's rights remain violated. Nonetheless, these events were only persisted by the BOE through a series of fraudulent and improper acts perpetrated by Defendants. Defendants cannot disregard every legal obligation and ethical responsibility and then rely upon those illegitimate findings in support of its position of truth. It is an utter travesty.

Further, the Defendants circularly argue that, "[A]lthough Plaintiff alleges generally that the accusations against him are 'remarkably false and unsubstantiated', he does not allege that he never made the statements attributed to him and reported by these newspapers." See, page 10 of Defendants' Memorandum of Law. Plaintiff disputes the principles discussed above, arguing instead that "substantial truth" is an affirmative defense that must await summary judgment. The argument relies on Garcia v. Puccio, 17 A.D.3d 199, 793 N.Y.S.2d 382 (1st Dept. 2005). In Garcia, supra, a school's principal told the parent of a student that a particular teacher had been accused of using corporal punishment in the past. Id. at 383. The teacher sued the principal for defamation. The principal moved to dismiss, arguing that the statement was substantially true, because the fact of previous accusations was "undisputed," and "plaintiff has the burden of showing the falsity of factual assertions." Id. (citation omitted). The trial court denied the motion to dismiss, and the Appellate Division affirmed. Id. at 383-84. The Appellate Division stated that "defendants' reliance upon the apparent truth of [the disputed] statement is premature at this point inasmuch as a claim of truth or substantial truth, like a claim of qualified privilege, is an affirmative defense to be raised in defendants' answer." Id. The court noted that "[i]t would be error to give conclusive effect to defendants' position of truthfulness before any affirmative defense to that effect has been raised in their answer." Id. at 384.

Likewise, the Defendants' arguments concerning privilege and immunity must also fail. Absolute immunity is determined by the nature of the function performed, rather than the title or identity of the official. See, Forrester v. White, 484 U.S. 219, 229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). In deciding whether an official's conduct in an administrative proceeding should be accorded

13

absolute immunity, the Court employs a "functional approach" to determine whether the procedures used by the agency are sufficiently similar to the judicial process to warrant a grant of immunity, (see, *Cleavinger v. Saxner*, 474 U.S. 193, 201-02, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985), and then look to whether the actions taken by the official are "functionally comparable" to that of a judge or prosecutor, (see, *Butz v. Economou*, 438 U.S. 478, 98 S. Ct. 2894, 57 L. Ed. 2d 895, 1978 U.S. LEXIS 132). Government actors who seek absolute immunity "bear the burden of showing that public policy requires an exemption of that scope." See, *Butz*, supra, 438 U.S. at 506.

To overcome any claim of absolute immunity, the Plaintiff alleges in his Verified Complaint that the individual Defendants acted without any legal authority. See, e.g., Exhibit B herein. Individual defendants herein cannot claim immunity, because the disciplinary hearing was without jurisdiction or authority. Whether non-judicial officers merit, *quasi-judicial* absolute immunity depends upon "the functional comparability of their judgments to those of the judge." See, *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976). "The functional comparability analysis is made by considering the following six factors, among others, characteristic of the judicial process: (a) the need to assure that the individual can perform his functions  without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of the error on appeal." See, *Cleavinger*, supra, 474 U.S. at 202 (citing, *Butz*, supra, 438 U.S. at 512.

The Defendants are not sufficiently independent to justify absolute immunity. The simple fact that the individual Defendants serve at the pleasure of superiors within the BOE creates a dependence upon the goodwill of these officials, who may, on occasion, place institutional interests above the rights of others similarly situated as the Plaintiff. Moreover, it is very likely that Defendants will be called upon to rule on policies instituted by superiors at BOE. Thus, this function in the educational system exhibits the "relationship between the keeper and the kept." See, *Cleavinger*, supra. As such, based on

14

the facts and circumstances of this action and the behavior of these Defendants, absolute immunity from defamation claims is not available to them. As such, Defendants' argument concerning defamation and absolute immunity must also fail.

### POINT III

### PLAINTIFF HAS DEMONSTRATED A CLAIM FOR AGE DISCRIMINATION UNDER THE NYSHRL

The Plaintiff has sufficiently demonstrated a claim for age discrimination under the NYSHRL. The Defendants erroneously contend that the Plaintiff fails to allege any facts suggesting an inference of discrimination with respect to Plaintiff's age. Yet, the Plaintiff has sufficiently demonstrated that his tenured position and proximity to retirement were clearly identified in the pleadings. The Plaintiff made much more than a conclusory allegation that the Principal Ojeda wanted the Plaintiff off his budget payroll. He demonstrated that despite the facts that (1) the arbitrator's ruling disqualified use of the investigative report and (2) that the racial discrimination charge was already found to be unsubstantiated, the Defendant, Principal was so desperate to have Plaintiff off his budget that he brought a racial discrimination specification against Plaintiff, without any possibility of proving it, immediately after making a fraught attempt to have the Plaintiff accept a remedy of change in status to one of an ATR, which would have removed the Plaintiff from his budget, when the Plaintiff made it known that he did not plan to retire.

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." See, 29 U.S.C. § 623(a)(1). "The ADEA covers the class of individuals who are over the age of 40, 29 U.S.C. § 631(a), and the evidentiary framework for proving age discrimination under the statute is the same as that for proving discrimination under Title VII." See, *Dressler v. N.Y. City Dept. of Educ.*, No. 10 Civ. 3769, 2012 U.S. Dist. LEXIS 44249, 2012 WL 1038600, (S.D.N.Y. March 29, 2012). Notably, the Plaintiff

was of the age to retire, accordingly, even while not specifying his exact age, the Defendants were unquestionably aware that he was over the age of 40.

Further, even assuming *arguendo*, where a Plaintiff lacks direct evidence of age discrimination, as it is alleged herein, the Court analyzes the claims under the *McDonnell Douglas*, (see, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)), burden-shifting framework. See, e.g., *Holowecki v. Fed. Exp. Corp.*, 382 Fed. App'x 42, 45 (2d Cir. 2010); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001). Under the *McDonnell Douglas*, supra, framework "a plaintiff has the initial burden of establishing a *prima facie* case of discrimination." See, *Sorlucco v. N.Y. City Police Dep't.*, 888 F.2d 4, 7 (2d Cir. 1989). In order to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) he/she belonged to a protected class; (2) he/she was qualified for the position; (3) he/she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably, or that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See, *McDonnell Douglas* Corp., supra; *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004); accord, *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (explaining that to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger' " (quoting, *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996) (additional citations omitted)). Once a plaintiff demonstrates these elements, thereby establishing a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. See, *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1155 (2d Cir. 1993). If the defendant carries this burden, the burden shifts back to the plaintiff to introduce evidence that the

16

defendant's explanations are pre-textual. Id. In order to satisfy her burden at the final stage, a plaintiff must offer evidence that age discrimination was the "but-for" cause of the challenged actions. See, *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 2350, 174 L. Ed. 2d 119 (2009). However, in order to preclude a dismissal, "the plaintiff need not prove that the proffered reasons were pre-textual; rather, [s]he need only (1) adduce evidence from which a reasonable fact-finder could directly infer that the discriminatory intent more likely motivated the employer than the proffered reason, or (2) show that the proffered explanation is unworthy of credence." In this regard, the Plaintiff's pleadings sufficiently demonstrate these criteria. See, *Dressler v. New York City Dept. of Educ.*, 2012 U.S. Dist. LEXIS 44249, 2012 WL 1038600.

Similarly, the NYSHRL provides, in pertinent part, that it is illegal for "an employer . . . because of an individual's age . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." See, N.Y. Exec. Law § 296(1)(a) (McKinney 2010), and claims for age discrimination under the NYSHRL are analyzed under the same basic framework as required in a federal ADEA claim. See, *Ludwig v. Rochester Psychiatric Ctr.*, 347 Fed. App'x 685, 686 n.1 (2d Cir. 2009); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 467 (2d Cir. 1997). As a result, the Plaintiff has plausibly plead a minimal inference of discrimination and thus, Plaintiff's NYSHRL age discrimination claim should not be dismissed.

## POINT IV

## PLAINTIFF HAS DEMONSTRATED A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE

Plaintiff has more than established that Defendants acted in a "grossly irresponsible manner without due consideration for the standards ordinarily followed by responsible parties in their position." See, *Chapadeau v. Utica Observer-Dispatch*, 38 NY2d 196, 199 (1975); see also, *Bloom v. Fox News of LA*, 528 F. Supp. 2d 69, (EDNY 2007). In order to support a claim for negligent infliction of emotional distress, Plaintiff is also required to allege conduct that is "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>See</u>, *Murphy v. Am. Home Products Corp.*, 58 NY2d 293, 303 [1983]. Defendants' extreme and outrageous conduct in these circumstances has been clearly alleged, and thus shall survive a motion to dismiss." <u>See</u>, *Sheila C. v. Povich*, 11 AD3d 120, 131 [1st Dept. 2004]. As a claim for negligent infliction of emotional distress arises out of a claim of negligence, Plaintiff has alleged that Defendants owed Plaintiff a duty and the breach of that duty owed to Plaintiff caused Plaintiff's damages. <u>See</u>, *Santana v. Leith*, 117 AD3d 711, 712 [2d Dept. 2014]. Plaintiff has clearly identified the duty owed to him by Defendants. In order to qualify as "extreme and outrageous," the conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>See</u>, *Sheila C.*, <u>supra</u>. To falsify and tamper with official documents, so as to conceal their own misconduct and erroneously substantiating false claims, subjecting Plaintiff to public admonishment and ridicule, and negatively affecting his status and means of employment is egregious, extreme, and outrageous. As a result, Plaintiff's claims must stand.

Defendants further erroneously argue that Plaintiff cannot, as a matter of law, plead negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, as they are duplicative of Plaintiff's defamation claims; nonetheless, the Court of Appeals considers merely the tort of intentional infliction of emotional distress and holds that is *likely* not available "where the conduct complained of falls well within the ambit of other traditional tort liability" <u>See</u>, *Fischer v. Maloney*, 43 NY2d 553, 558 [1978]). This analysis would reasonably require a review of the facts and circumstances of the claims, which could not as a matter of law, support a dismissal.

Therefore, based on the foregoing, Plaintiff's allegations sufficiently demonstrate the conduct necessary to grant such claims.

18

## POINT V

## PLAINTIFF HAS DEMONSTRATED A CLAIM FOR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

While it is undisputed that New York sets a high threshold for conduct that is "extreme and outrageous" enough to constitute intentional infliction of emotional distress, (see, *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983) ("so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society]") (quoting, Restatement of Torts, Second, § 46 cmt. d (1965)), other lower state courts have sustained some emotional distress claims, against a motion to dismiss, that appear to allege conduct that is somewhat less than "utterly intolerable in a civilized society." See, *Flatley v. Hartmann*, 138 A.D.2d 345, 346, 525 N.Y.S.2d 637, 638 (2d Dep't 1988) ("hang-up" telephone calls"); *Halio v. Lurie*, 15 A.D.2d 62, 67, 222 N.Y.S.2d 759, 764 (2d Dep't 1961) (taunting letter from former boyfriend, boasting of marriage); *Flamm v. Van Nierop*, 56 Misc. 2d 1059, 1061, 291 N.Y.S.2d 189, 191 (Westchester Cty. Sup. Ct. 1968) (harassing plaintiff by driving too closely and making threatening looks). Somewhat pertinent to our case, an allegation that a female police officer made a false complaint against a plaintiff was held by the Appellate Division to state a claim for infliction of emotional distress, sufficient to withstand dismissal. See, *Levine v. Gurney*, 149 A.D.2d 473, 473, 539 N.Y.S.2d 967, 968 (2d Dep't 1989).

The Defendants further erroneously argue that the Plaintiff's claim is time barred by a one year statute of limitations. However, as with defamation causes of action, the one-year-and-ninety-day statute of limitations under N.Y. Gen. Mun. L. § 50-i overrides the one-year statute of limitations set forth in CPL §215(3) for intentional infliction of emotional distress claims alleged against municipal corporations and any individuals they must indemnify. See, *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) (holding the one-year-and-ninety-day statute of limitations applied to intentional infliction of emotional distress claim against "the City (or an individual whom the City must indemnify)") (citing

N.Y. Gen. Mun. L. § 50-i); see also, *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 2001 U.S. Dist. LEXIS 7918 ("[I]n light of specific language in § 50—i(3), the statute is intended to override inconsistent provisions of law, and the longer one-year and ninety-day limitations period applies to claims against City Defendants for intentional infliction of emotional distress.").

Plaintiff alleges that the actions underlying his intentional infliction of emotional distress claim were performed by the individual Defendants and their identified agents in the furtherance of their respective employment); see also, *International Shared Servs. v. County of Nassau*, 222 A.D.2d 407, 634 N.Y.S.2d 722, 1995 N.Y. App. Div. LEXIS 12583, 634 N.Y.S.2d at 724 (noting the obligation to indemnify "depends upon the resolution of the fact-sensitive question of whether [the employees] were acting within the scope of their employment" when committing the alleged torts). Accepting the factual allegations in the Complaint as true, Plaintiff's intentional infliction of emotional distress claim is timely as it was filed on February 4, 2020, within one year and ninety days of March, 2019, when the Plaintiff was released from unlawful reassignment.

In determining whether the pattern of conduct pled is sufficiently extreme, "the proper inquiry is not merely whether each individual act might be outrageous. Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign." See, *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019). As such, Plaintiff asserts Defendants' actions in conducting an improper and negligent and deficient investigation leading to his removal was outrageous, shocking, and exceeded all reasonable bounds of decency. See, *Sullivan v. Bd. of Educ. of Eastchester Union Free Sch, Dist.*, 131 A.D.2d 836, 517 N.Y.S.2d 197, 199 (N.Y. App. Div. 1987) (holding high school principal adequately pled intentional infliction of emotional distress claim against Board of Education where he alleged the Board "used the threat of bringing falsified charges against him to coerce him into resigning from his tenured position"). Accordingly, the Plaintiff's claims for intentional infliction of emotional distress should not be dismissed.

20

## POINT VI

## PLAINTIFF HAS DEMONSTRATED A CLAIM FOR FRAUD

Defendants disingenuously argue that Plaintiff's Verified Complaint fails to offer any specific details of the alleged fraud; however, this argument is without merit and should be disregarded by this Court. Plaintiff's complaint is wrought with specific accounts of the false material representations presented by Defendants as truth, as well as Defendants' misconduct in manipulating and falsifying documents to accomplish their own agenda and concealing their own failures in abiding by the rules and regulations.

Plaintiff's Verified Compliant specifically sets forth these details with extreme specificity, for example, notably, as stated in ¶ 22, the original complaint electronically transmitted to OSI on or about February 28, 2014, only specified two issues, and no documentation of that transmission was ever provided to the Plaintiff during discovery by the New York City Department of Education. The investigator concluded that the complaining student didn't want to get other students involved, yet the complaint evidently revised after February 28, 2014, adds incidents of which, the actual students involved have no recollection. Only the complaining student brings new complaints and new students into the investigation. Further as stated in ¶ 23, it took more than two years, for an the OEO investigation report dated November 3, 2016, to be prepared, and on January 25, 2017, a prehearing conference was held by a hearing officer to discuss the Plaintiff's motion to dismiss the specifications brought against him by the New York City Department of Education, as well as outstanding discovery issues. See, ¶ 24. It was undisputed that the New York City Board of Education's specifications were untimely reduced to writing under the existing collective bargaining agreement. On this regard the New York City Department of Education sought, *inter alia*, to inappropriately amend the time period of the second specification against the Plaintiff to have it correspond with their own narrative. Id. Further, in the preliminary hearing, the Defendant, Jessica Kishpaugh continued this fraudulent

procedure by disingenuously indicating to the arbitrator that "*the OEO is so backlogged with cases;*" therefore, attempting to justify a request for the arbitrator to ignore the Plaintiff's due process and amend the date of the charge to for within the three (3) year timeframe, even though no new evidence was produced to show that that prior date was incorrect. See, ¶ 25. They evidently only sought to get to the hearing phase, where most teachers will be afraid and vulnerable and more apt to strike a deal with the Defendants. There was no dispute that the Plaintiff had not received any written determination or an opportunity to answer the charges in writing until some two and a half years after the initial complaint and completion of the investigation in November, 2017. See, ¶ 26. A number of weeks after the arbitrator ruled in the Plaintiff's favor, (and a day before the three (3) year statute of limitations was to expire), the Plaintiff received the 3020-a specification charging him with an allegation, which was *already* deemed unsubstantiated by the investigator in her original report and was signed off by Defendant, Laura Hemans Brantley, Esq. and Defendant, Howard Friedman, General Counsel to the Chancellor on November 3, 2016. See, ¶ 27. Further, on February 28, 2017, the Plaintiff received correspondence from the Defendant, Howard Friedman's office, executed by Karen Antoine, Acting Deputy Counsel to the Chancellor stating:

> "I have been advised by Moses Ojeda, Principal of Q620, located in Queens, within District 28, that probable cause has been found on the charges preferred against you. In addition, I have received a recommendation that you be suspended. I have determined that the nature of the charges against you requires your immediate removal from your assigned duties….pending the hearing and determination of the charges preferred against you. You are to continue to report to your current assignment, unless you receive notification of a new assignment."

Curiously, following the filing of the February 27, 2017 charges, the Plaintiff was informed that the New York City Department of Education would drop all charges against him if he agreed to become an ATR (Absent Teacher Reserve) and take sensitivity training. The Plaintiff declined, as he was being asked to accept punishment for a charge that had not been substantiated. See, ¶s 30-31.

Plaintiff has sufficiently established that Defendants' purposeful misconduct, in tampering,

concealing material existing facts, and making false material representations constituted material false representations, which Defendants knowingly made to and with regard to Plaintiff with the intent to deceive. In addition, Plaintiff and others justifiably relied on the veracity and accuracy of Defendants' representations and was damaged as a result. This is clearly set forth in the pleadings.

Further, Defendants' collective actions constitute acts of deception and manipulation, by omission, concealment, and commission, in undertaking to serve as the administrators, investigators, liaisons, and monitors of such subject complaints and procured, generated, or assisted in generating repeated false and misleading statements and information in violation of the Chancellor Regulations and State and Federal laws and the Plaintiff's due process and civil rights. As such, Defendants fail in their attempt to argue that Plaintiff failed to plead any facts which state a claim for fraud.

## POINT VII

### PLAINTIFF HAS DEMONSTRATED A CLAIM FOR VOLATION OF DUE PROCESS UNDER 42 USC § 1983 AND ARTICLE I, § 11 OF THE NEW YORK CONSTITUTION

Under *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983, if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality. An employee must be acting pursuant to a municipal "policy." To establish a municipal "policy," a plaintiff must prove that the municipal action was (i) taken with the requisite degree of culpability and (ii) causally linked to the deprivation of a federal right. See, also, Amendment 14 of the United States Constitution. The specific actions and statements of these Defendants are indicative of a pattern of behavior against tenured teachers, who are of retirement age. Here, there is no check and balance of the authority of the administrators in this regard; they are free to disregard proper protocol and ignore Plaintiff's basic rights, with no accountability. Plaintiff's claims clearly identify a violation of his rights. The municipality cannot use this argument as both a "sword and shield" against Plaintiff.

23

Moreover, deliberate indifference has been clearly established by Plaintiff. There was an obvious, conscious choice to disregard the protocols and manipulate and fabricate the information against Plaintiff. The pleadings demonstrate that Defendants were more than merely negligent in their actions and behavior; ignoring all proper protocols and submitting outdated and fabricated documents in an attempt to sustain a finding against Plaintiff. Thus, Plaintiff's claim has been sufficiently plead, and Defendants' argument must fail.

The equal protection clause of the New York State Constitution (Art I, § 11) does not require identity of treatment; the Legislature may classify persons for purposes of legislation without infringement of the equal protection guarantee and its discretion in this regard is broad and will not be disturbed if any state of facts can reasonably be conceived to sustain its classification or even if the classification be fairly debatable, provided only it shall not be palpably arbitrary. See, *Muessman v. Ward*, 95 Misc. 2d 478, 408 N.Y.S.2d 254, 1978 N.Y. Misc. LEXIS 2450 (N.Y. Sup. Ct. 1978). Plaintiff has sufficiently demonstrated that his age and proximity to retirement motivated the Defendants' actions. As a result, Plaintiff's New York Constitutional claim should not be dismissed.

## CONCLUSION

Based on the foregoing, it has been demonstrated that the Defendants have failed to meet the standard in this Circuit that is necessary on a motion to dismiss under Rule 12 (b). Accordingly, the Defendants' motion to dismiss should be denied in all respects and Plaintiff should have such other and further relief that this Court may deem just and proper.

Dated: Garden City, New York
      June 30, 2020

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL4471)

24